IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA C., ) | |
| ) | No. 24 C 50194 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| LELAND DUDEK, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Maria C. appeals the Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court reverses the Commissioner's decision.

**Background**

On December 6, 2021, plaintiff applied for benefits, alleging a disability onset date of November 18, 2016. (R. 15.) Her application was denied initially, on reconsideration, and after a hearing. (R. 15-27, 57, 62.) Plaintiff appealed to the Appeals Council, which declined review (R. 1-3), leaving the ALJ's decision as the final decision of the Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity from November 18, 2016, the alleged onset date, through June 30, 2022, her date last insured ("DLI"). (R. 17.) At step two, the ALJ found that, from the alleged onset date through the DLI, plaintiff had the severe impairments of Class III obesity, diabetes, and degenerative disc disease. (*Id. at* 18.) At step three, the ALJ found that from the alleged onset date through her DLI, plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment. (R. 19.) At step four, the ALJ found that in the relevant period plaintiff had the RFC to perform her past relevant work as a production assembler, and thus she was not disabled. (R. 20-26.)

Plaintiff argues that the ALJ erred in finding her upper extremity and knee impairments to be nonsevere. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R.

2

§ 404.1522. Basic work activities include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." *Id.* The ALJ noted that plaintiff had "had procedures to correct bilateral carpal and cubital tunnel syndromes, bilateral de Quervain's tenosynovitis, and bilateral tennis elbow" before her alleged disability onset date. (R. 18.) He also noted that on October 26, 2016, plaintiff's treating surgeon, Dr. Marko F. Krpan, D.O., released plaintiff to work at the light level based on a functional capacity evaluation. (*Id.*) (citing R. 560). The ALJ further noted the results of the November 10, 2022, independent medical evaluation by Dr. Neal, who said: (1) plaintiff reported having pain in her hands, wrists, and arms upon palpation, which "was medically unexplainable and non-physiological" (R. 2510); (2) plaintiff did not need further treatment for her upper extremities and had reached maximum medical improvement as of October 26, 2016 (R. 2512); and (3) plaintiff was "capable of working a sedentary desk job . . . . with intermittent ambulation and intermittent[] lifting up to 25 pounds to her chest level" (R. 2512-13). Based on this evidence, the ALJ said, "[b]ecause the claimant's multiple upper extremities tendinopathies were treated successfully, and her treating physician found she was capable of returning to work at the light level, these conditions are not severe." (R. 19.)

Plaintiff contends that the ALJ's conclusion is based on a misreading of the record. The ALJ said, for example, that on October 26, 2016, when Dr. Krpan released plaintiff to perform light duty work, plaintiff was currently performing a medium duty job as an assembler. (R. 18.) The ALJ may have misstated the record in this respect, as plaintiff testified that she had not worked

3

since September 2016. (R. 46.) But it does not matter whether plaintiff was working on October 26, 2016. What matters is that Dr. Krpan released her to return to light duty work on that date.

Plaintiff further contends that her functional capacity evaluation "did not strictly and solely find [that she] could do light duty work" because it restricted her lifting to twenty pounds and said, "she had only occasional dexterity." (ECF 17 at 6.) However, those restrictions fall within the SSA's definition of light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Moreover, Dr. Krpan considered the FCE before he released plaintiff to light duty without a dexterity limitation. (*See* R. 560 ("At this time, based upon the findings of the functional capacity exam, the patient demonstrated only the physical capabilities and tolerances to function at a light physical demand occupation.").)

Finally, plaintiff contends that the ALJ's finding that plaintiff's upper extremity conditions were not severe was based on an improper medical judgement, *i.e.*, that plaintiff's "'tendinopathies' had resolved." (ECF 17 at 8.) But that is not what the ALJ said. Rather, he said because plaintiff's "multiple upper extremities tendinopathies were treated successfully" and her doctor released her to do light work, those impairments were not severe. (R. 19.) Because the ALJ based his severity finding on the evidence from plaintiff's doctors, not from playing doctor, it is not the basis for a remand.

4

As for plaintiff's knees, the ALJ said a January 10, 2017 exam showed "some crepitus, tenderness, and palpable popliteal cyst[1] in the right knee, and decreased range of motion." (R. 24.) The ALJ also said x-rays showed "mild to moderate osteoarthritis bilaterally" and that plaintiff had received steroid injections in both knees. (R. 22, 24.) He also said, however, that "[w]ith treatment, [plaintiff] had no signs of antalgic gait, and she could ambulate without using an assistive device." (R. 22.)

The ALJ did not, however, mention that plaintiff had night pain "sufficient to wake [her] up" and x-rays taken in April 2019 showed "severe osteoarthritic change in the bilateral knees." (R. 2052, 2056.) Moreover, the ALJ's assertion that the medical record did not document plaintiff having an antalgic gait is simply wrong. (*See* R. 2052, 2056, 2060, 2063, 2066, 2069-70 (notes from examination of right and left knees on 1/13/17, 7/16/2017, 4/3/18, 7/20/28, 12/20/18, and 4/25/19 stating that gait was antalgic).) Had the ALJ considered this evidence, he may have fashioned an RFC that limited plaintiff to sedentary work. If so, given plaintiff's age, 54 at alleged onset and 60 at DLI, her limited education, and lack of transferrable skills (R. 53), Social Security Grid Rule 201 would dictate a finding of disability. See SSA - POMS: DI 25025.035 - Tables No. 1, 2, 3, and Rule 204.00 - 06/26/2020 (last visited Mar. 21, 2025). Accordingly, the case must be remanded for reconsideration of plaintiff's knee impairments.

---

[1] A popliteal cyst "is a fluid-filled growth behind the knee. It causes a bulge and a feeling of tightness. . . . [and] sometime[s] causes pain. The pain can get worse when with activity or when fully straightening or bending the knee. *See* https://www.mayoclinic.org/diseases-conditions/bakers-cyst/symptoms-causes/syc-20369950 (last visited Mar. 21, 2025).

**Conclusion**

For the reasons set forth above, the Court reverses the Commissioner's decision and remands this case in accordance with the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED**

**DATED: 3/26/25**                    ENTERED:

_M. David Weisman_
**M. David Weisman**
**United States Magistrate Judge**